IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (423) 463-2483 | Case No. 1-19-mj-98<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, James C. Hixson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (423) 463-2483, with unknown subscriber(s) (the "Target Cell Phone"), whose service provider is Cellco Partnership d/b/a Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster New Jersey 07921. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") Field Office in Chattanooga, Tennessee. I am an investigative or law enforcement officer of the

Page **1** of **9**
Case 1:19-mj-00098-CHS   Document 3   Filed 06/12/19   Page 1 of 9   PageID #: 7

United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. I have been employed as a police officer with the Chattanooga Police Department in Chattanooga, Tennessee for approximately 24 years. I have been assigned as an investigator in the field of narcotics investigations for approximately 18 years. I am currently assigned as a Task Force Officer for the DEA Chattanooga Resident Office. I have been a Task Force Officer for approximately 15 years. During my tenure as an investigator assigned to narcotics investigations, I have gained a working knowledge of narcotics trafficking methods and techniques and recognizing evidence of criminal activity, including evidence obtained from cellular telephones, and seizing evidence and assets related to/derived from such criminal activity. My present duties include the investigation of violations of federal law by individuals involved in the sale and distribution of controlled substances.

5. During my tenure as a narcotics investigator and Task Force Officer, I have investigated and participated in investigations of organized criminal groups violating federal drug trafficking laws. As part of my official duties, I have utilized most traditional law enforcement techniques, including: visual surveillance, witness interviews, execution of search warrants, the use of cooperating witnesses, seizure of drug evidence, controlled purchases of drug evidence, court-authorized pen registers, court-authorized interceptions of wire communications, and undercover techniques. I have debriefed numerous cooperating defendants and confidential informants regarding the habits, practices, methods, and general behavior of criminal groups engaged in organized criminal activity. I have personally participated in Title III wire intercept investigations, including investigations involving large-scale drug trafficking organizations and

Page 2 of 9
Case 1:19-mj-00098-CHS   Document 3   Filed 06/12/19   Page 2 of 9   PageID #: 8

drug traffickers. I have received specialized training in conducting drug investigations and have attended numerous conferences and lectures featuring government attorneys and law enforcement officials. Over the course of my career, I have participated in numerous arrests of known drug traffickers and their associates. This experience has afforded me an opportunity to observe and investigate methods, schemes, and operations used by organized groups, including the use of cellular telephones and of digital display paging devices, and their use of numerical codes and code words to conduct their transactions. In addition, I have participated in investigations concerning the concealment of proceeds of controlled substances, including assets, monies, and bank records, and the identification of co-conspirators through the use of drug ledgers, telephone toll records, telephone bills, photographs, and financial records. These investigations have resulted in the arrest of individuals who have smuggled, received, and/or distributed controlled substances, including methamphetamine, cocaine hydrochloride, cocaine base, heroin, and marijuana, as well as the seizure of controlled substances and the proceeds of the sale of these controlled substances. I know based upon my training and experience that narcotics traffickers and money laundering organizations routinely use several operational techniques. These practices are designed and implemented to achieve two paramount goals: first, the successful facilitation of the organization's illegal activities that consist of the transportation and distribution of controlled substances and subsequent collection of the proceeds of that illegal activity; and second, minimizing the exposure of organization members, particularly those operating in management roles, from investigation and prosecution by law enforcement.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846, distribution, possession with intent to distribute, and conspiracy to distribute heroin have been committed, are being committed, and will be committed by unknown persons. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. The United States, including The Drug Enforcement Administration, is conducting a criminal investigation of an unidentified subject regarding possible violations of 21 U.S.C. §§ 841 and 846, distribution, possession with intent to distribute, and conspiracy to distribute heroin.

10. On June 11, 2019, officers of the Chattanooga Police Department were called to 7014 McCutcheon Road Room #228 at the Microtel in Chattanooga, Tennessee on an overdose. Upon arrival, First Responders located the victim Heather Riley unresponsive on the floor of room 228. Officers also located a witness known to law enforcement who was an occupant of the room. EMS units attempted CPR on Riley but were unsuccessful, Riley was pronounced dead shortly thereafter.

Page 4 of 9
Case 1:19-mj-00098-CHS   Document 3   Filed 06/12/19   Page 4 of 9   PageID #: 10

11. Your affiant, along with other officers on the scene were able to interview the witness/occupant of the room. According to the witness, he/she woke up, prior to calling 911, to find Riley unresponsive on the floor. The witness stated she tried to revive Riley by administering her Narcan. Your affiant is aware that Narcan is an antidote that reverses an opioid overdose. The witness stated that she and Riley had been using heroin and had last used heroin in the early morning hours. The witness stated that she last saw Riley alive around 6:00 AM prior to going asleep.

12. According to the witness, at approximately 11:00 PM, on June 10, 2019, she and Riley met a black male who goes by the name "BJ." The witness said, "BJ" is Riley's source of supply for heroin and had been distributing heroin to Riley for sometime. The witness stated that the heroin they used on this date was purchased from "BJ". The witness said that she and Mrs. Riley met "BJ" at a residence in the area of Bonny Oaks Drive in Chattanooga, Tennessee but could not remember exactly how to get to the residence. The witness said Riley had arranged the purchase of heroin from "BJ" on her (Riley's) cellular phone and had used the GPS on her cellular phone to arrive at the address provided by "BJ". The witness said that once they arrived in the area of the address provided by "BJ" he walked over to their vehicle and got into the driver's side back seat. The witness said "BJ" then exchanged heroin for money with Riley. The witness said this was the first time she had met "BJ". The witness described "BJ" as a black, male, approximately 5'10" to 6 ft. slim build with short hair wearing a shiny belt. The witness said he/she could not provide any details about the address, "BJ's" cell phone number, or "BJ's" true identity. The witness said that Riley's cellular phone likely still had that data stored on it.

13. Officers conducting an inventory of the crime scene located a cell phone matching the description of the phone belonging to Riley. Your affiant opened the cellular phone and located

a series of text messages between Riley and a contact stored under the name "BJ". The text messages clearly indicated Riley was purchasing heroin from "BJ" and that the information provided by the witness was accurate. Your affiant determined that the cellular phone number stored under the contact "BJ" was (423) 463-2483. Riley exchanged a series of text messages with "BJ" in which she said, "The same but u still owe me 4vpoints from the last time." Mrs. Riley also stated, "Got 500 to spend". "BJ" replied, " that aint gne get u the same thing" and provided "6310 Jocelyn dr pul up kut lights off". Your affiant located in the GPS map application on the cellular phone where Mrs. Riley had searched for directions to 6310 Jocelyn Drive. Your affiant also determined that 6310 Jocelyn Drive is an address off Bonny Oaks Drive in Chattanooga, Tennessee. Your affiant also noted the times on the exchange of text messages corresponded with the times provided by the witness

14. In my training and experience, heroin distributors and dealers, typically have more than one customer, sell to said customers more than one time, and maintain possession amounts of heroin to supply said customers.

15. You affiant submits that there is probable cause that "BJ" is a heroin distributor. Your affiant further submits that there is probable cause that requested location information will constitute evidence of heroin distribution, in that, it will assist law enforcement to ascertain the location of possible "stash" houses and future drug transactions and to locate and identify "BJ."

16. In my training and experience, I have learned that Cellco Partnership d/b/a Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-

Page **6** of **9**

Case 1:19-mj-00098-CHS   Document 3   Filed 06/12/19   Page 6 of 9   PageID #: 12

site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

17. Based on my training and experience, I know that Cellco Partnership d/b/a Verizon Wireless can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Cellco Partnership d/b/a Verizon Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

Case 1:19-mj-00098-CHS   Document 3   Filed 06/12/19   Page 7 of 9   PageID #: 13

19. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

20. I further request that the Court direct Cellco Partnership d/b/a Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Cellco Partnership d/b/a Verizon Wireless. I also request that the Court direct Cellco Partnership d/b/a Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Cellco Partnership d/b/a Verizon Wireless' services, including by initiating a signal to determine the location of the Target Cell Phone on Cellco Partnership d/b/a Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times

directed by the government. The government shall reasonably compensate Cellco Partnership d/b/a Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

_____
James C. Hixson
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on June 12, 2019

_____
HON. CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE